UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILLIAM LEWIS,<br><br>        Plaintiff,<br><br>v.<br><br>ETHOSENERGY POWER PLANT SERVICES, LLC and CAITHNESS SERVICES LLC d/b/a CAITHNESS MOXIE FREEDOM<br><br>        Defendants. | CIVIL ACTION NO. 3:22-CV-01865<br><br>(MEHALCHICK, J.) |

**MEMORANDUM**

Pending before this Court are motions for summary judgment filed by Defendants EthosEnergy Power Plant Services, LLC ("EthosEnergy") and Caithness Services, LLC d/b/a Caithness Moxie Freedom ("Moxie Freedom") (collectively, "Defendants"). (Doc. 37; Doc. 39). This is a civil action initiated upon the filing of the complaint by Plaintiff William Lewis ("Lewis") on or about May 25, 2022 in the Luzerne County Court of Common Pleas against Defendants. (Doc. 1-3). Defendants removed the case to this Court on November 23, 2022. (Doc. 1). In his complaint, Lewis asserts claims under the Pennsylvania Whistleblower Law ("PWL") and common law wrongful termination. (Doc. 1-3).

I. **BACKGROUND AND PROCEDURAL HISTORY**

This factual background is taken from the parties' statements of material facts and accompanying exhibits, as well as opposing parties' responses thereto. (Doc. 38; Doc. 38; Doc. 39; Doc. 40; Doc. 41; Doc. 42; Doc. 46; Doc. 48; Doc. 51).[1]

---

[1] The Court notes that Lewis did not file a response to EthosEnergy or Moxie Freedom's statement of material facts. Accordingly, the Court will attempt to examine

EthosEnergy employed Lewis at the Freedom Power Plant, a power plant owned by Moxie Freedom and managed by EthosEnergy from June 2018 through November 29, 2021. (Doc. 41-1; Doc. 41-2). On February 5, 2021, Lewis was promoted to Facility Manager, a position in which Lewis was responsible for facility operation at the Freedom Power Plant. (Doc. 46-5; Doc. 46-6). During Lewis's employment with EthosEnergy, both before and after his promotion, Lewis reported to Chris Ferrell ("Ferrell") as his immediate supervisor. (Doc. 41, ¶ 3; Doc. 46-2, at 34). On November 29, 2021, Lewis was terminated from his position by EthosEnergy. (Doc. 41-2). Lewis contends that his firing was retaliation in connection with his decision to report a colleague for misconduct. (Doc. 46, at 1-2). The facts leading up to and subsequent to that report are as follows. On November 18, 2021, Jack Monahon ("Monahon"), a Moxie Freedom employee, pulled a piece of equipment for inspection without following proper safety procedures as required by OSHA and without filling out the necessary paperwork, known as a Workers Authorization Form ("WAF"), required by company policy. (Doc. 41-4, at 6-11; Doc. 41-5, at 5-6, 17; Doc. 41-6, at 6-8; Doc. 46, at 5; Doc. 47; Doc. 48; Doc. 49; Doc. 50). Monahan notified Lewis that he conducted this unauthorized inspection via email. (Doc. 41, ¶ 52; Doc. 41-6, at 8; Doc. 41-29).

After receiving Monahan's email, Lewis spoke with Ferrell to report Monahan's

---

evidence in the record to corroborate facts included in Defendants' statements of material facts, though it is under no requirement to do so. *See* Local Rule 56.1 ("The papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts, responding to the numbered paragraphs set forth in the statement required in the foregoing paragraph, as to which it is contended that there exists a genuine issue to be tried. Statements of material facts in support of, or in opposition to, a motion shall include references to the parts of the record that support the statements. All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.")

activities that violated safety procedures. (Doc. 41-4, at 14-16; Doc. 41-5, at 17-19; Doc. 41-6, at 9; Doc. 41-30). Ferrell expressed surprise that Monahan engaged in such conduct, and after additional investigation, Ferrell and Lewis met again to discuss providing necessary safety training to Monahan. (Doc. 41-4, at 14-17; Doc. 41-5, at 17-19; Doc. 41-6, at 9). Lewis and Monahan also spoke about the incident one-on-one and again with Health, Safety, and Environmental Manager Ryan Singer ("Singer"). (Doc. 41-4, at 14-16; Doc. 41-5, at 17-19; Doc. 41-6, at 9). While Monahan agreed to follow safety protocols in the future, he refused to sign a safety acknowledgment. (Doc. 41-4, at 14-17; Doc. 41-5, at 17-19; Doc. 41-6, at 9; Doc. 46-4, ay 95-96). Lewis never chastised by Ferrell, who shared Lewis's concerns. (Doc. 41-4, at 14-17). On November 23, 2021, Lewis was terminated by EthosEnergy. (Doc. 41-2).

       EthosEnergy submits that Lewis's work performance was the cause of his termination. (Doc. 46-4, at 136). As Facility Manager, Lewis was required to submit a monthly report for Moxie Freedom, a responsibility that was new to Lewis after his promotion. (Doc. 46-2, at 51; Doc. 41-4, at 22; Doc. 46-4, at 146-147). Ferrell sent Lewis multiple emails revising mistakes on monthly reports, noting errors with formatting and attention to detail. Ferrell emailed Lewis on March 9, 2021, April 6, 2021, May 8, 2021, June 10, 2021, September 9, 2021, October 8, 2021, October 12, 2021, November 9, 2021, November 17, 2021 and November 22, 2021. (Doc. 41-8; Doc. 41-9; Doc. 41-10; Doc. 41-11; Doc. 41-13; Doc. 41-14; Doc. 41-15; Doc. 41-16; Doc. 41-17; Doc. 41-18). In each of these emails, Ferrell pointed out repeated mistakes and asked Lewis to fix them. (Doc. 41-8; Doc. 41-9; Doc. 41-10; Doc. 41-11; Doc. 41-13; Doc. 41-14; Doc. 41-15; Doc. 41-16; Doc. 41-17; Doc. 41-18). In one email, Ferrell states "I fix the same mistakes every month." (Doc. 41-13). Lewis also failed to meet

expectations during a system outage where he sent emails to the incorrect individuals and failed to thoroughly and properly inspect systems to find the root of the problem. (Doc. 41, ¶¶ 27-37; Doc. 41-4, at 17-20; Doc. 41-5, at 27-28; Doc. 41-7, Doc. 41-22). On November 18, 2021, Lewis was asked if he checked for standing water during a system outage and replied, "yes no water." (Doc. 41, ¶¶ 27-37; Doc. 41-4, at 17-20; Doc. 41-5, at 27-28; Doc. 41-7, Doc. 41-22). On November 20, 2021, water was found, and Lewis stated that the contradiction was because water was not viewable physically through inspection ports. (Doc. 41, ¶¶ 27-37; Doc. 41-4, at 17-20; Doc. 41-5, at 27-28; Doc. 41-7, Doc. 41-22). Water would have been impossible to see without opening lids of inspection ports. (Doc. 41, ¶¶ 27-37; Doc. 41-4, at 17-20; Doc. 41-5, at 27-28; Doc. 41-7, Doc. 41-22). EthosEnergy contends that Lewis did not properly manage the crisis by checking thoroughly. (Doc. 41, ¶¶ 27-37; Doc. 41-4, at 17-20; Doc. 41-5, at 27-28; Doc. 41-7, Doc. 41-22). EthosEnergy personnel, including Ferrell, also provided Lewis was negative feedback regarding his availability and responsiveness to calls and texts after hours, a responsibility included in his Facility Manager job description. (Doc. 41, ¶¶ 38-45; Doc. 41-7; Doc. 41-4, at 21-22; Doc. 41-5, at 22-24; Doc. 41-6, at 5; Doc. 41-7). Moxie Freedom employees complained about Lewis's lack of responsiveness most recently on November 21, 2021. (Doc. 41-7, at 2). EthosEnergy cites performance issues as the reason for Lewis's termination. (Doc. 41-2; Doc. 41-7).

On March 26, 2024, Moxie Freedom and EthosEnergy filed motions for summary judgment, along with briefs in support, statements of facts, and accompanying exhibits. (Doc. 37; Doc. 38; Doc. 39; Doc. 40). On July 8, 2024, Lewis filed a single brief in opposition, responsive to both motions, as well as accompanying exhibits. (Doc. 46). On July 22, 2024,

EthosEnergy filed a reply brief. (Doc. 48). On July 24, 2024, Moxie Freedom filed its reply brief. (Doc. 51). The motions are thus ripe for disposition.

## II.  LEGAL STANDARD FOR MOTION FOR SUMMARY JUDGMENT

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994). However, a party opposing a summary judgment motion must comply with Local Rule 56.1, which specifically directs the oppositional party to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted." *See* M.D. Pa. L.R. 56.1.

A federal court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Farrell v. Planters Lifesavers Co.,* 206 F.3d 271, 278 (3d Cir. 2000).

In deciding a motion for summary judgment, the court's function is not to make credibility determinations, weigh evidence, or draw inferences from the facts. *Anderson*, 477 U.S. at 249. Rather, the court must simply "determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and demonstrating the absence of a genuine dispute of any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant makes such a showing, the non-movant must go beyond the pleadings with affidavits or declarations, answers to interrogatories, or the like to demonstrate specific material facts which give rise to a genuine issue. Fed. R. Civ. P. 56(c); *Celotex,* 477 U.S. at 324. The non-movant must produce evidence to show the existence of every element essential to its case, which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex,* 477 U.S. at 323. Furthermore, mere conclusory allegations and self-serving testimony, whether made in the complaint or a sworn statement, cannot be used to obtain or avoid summary judgment when uncorroborated and contradicted by other evidence of record. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *see also Thomas v. Delaware State Univ.*, 626 F. App'x 384, 389 n.6 (3d Cir. 2015) (not precedential) ("[U]nsupported deposition testimony, which is contradicted by the record, is insufficient to defeat summary judgment."); *Nat'l Labor Rel. Bd. v. FES*, 301 F.3d 83, 95 (3d Cir. 2002) ("[The plaintiff's] testimony . . . amounts to an unsupported, conclusory assertion, which we have held is inadequate to satisfy the movant's burden of proof on summary judgment.").

**III.    DISCUSSION**

    A.  JOINT EMPLOYER RELATIONSHIP BETWEEN MOXIE FREEDOM AND ETHOSENERGY

Moxie Freedom moves for summary judgment based on its contention that it did not employ Lewis and therefore cannot be liable for his discharge. (Doc. 38, at 9-11). Lewis argues that Moxie Freedom and EthosEnergy were "joint-employers" of Lewis, and as a joint-employer, Moxie Freedom can be liable for wrongdoing surrounding Lewis's firing. (Doc. 46, at 20-24).

Independent legal entities may be joint employers when they both "exert significant control over the same employees—where from the evidence it can be shown that they share or co-determine those matters governing essential terms and conditions of employment." *NLRB v. Browning-Ferris Indus. of Pa., Inc.*, 691 F.2d 1117, 1124 (3d Cir. 1982). A joint employer relationship is typically shown using common law agency principles. Courts look to the following factors when determining whether two entities are to be considered joint employers: "(1) the entity's authority to hire and fire employees, promulgate work rules and assignments, and set conditions of employment, including compensation, benefits, and hours (2) its day-to-day supervision of employees, including employee discipline; and (3) its control of employee records, including payroll, insurance, taxes and the like." *Plaso v. IJKG, LLC*, 553 F. App'x 199, 204-05 (3d Cir. 2014) (internal citations omitted); *see also Faush v. Tuesday Morning, Inc.*, 808 F.3d 208, 214 (3d Cir. 2015).

Here, Lewis has testified that Moxie Freedom was not at any time his employer. (Doc. 37-4, at 223). Further, Lewis has not presented evidence that Moxie Freedom had the authority to hire or fire EthosEnergy employees, such as Lewis or that Moxie Freedom was

7

engaged in setting any kinds of conditions of employment for EthosEnergy employees, such as compensation, hours, or day-to-day management, or that it controlled any employee records, such as taxes and payroll. Instead, Lewis cites to evidence in the record that Moxie Freedom managers and employees had a cooperative working relationship with EthosEnergy employees and described chains of communication between employees of both entities to execute tasks like obtaining equipment for the premises. (Doc. 26, at 22-24; Doc. 46-3, at 5-6; Doc. 46-4, at 124). However, cooperative working relationships and chains of communication do not amount to evidence of a joint employer relationship. No issue of material fact exists as to whether Moxie Freedom was Lewis's employer – it was not. Accordingly, the claims against Moxie Freedom fail. Moxie Freedom's motion for summary judgment will be **GRANTED**. (Doc. 37). The parties do not appear to dispute that EthosEnergy employed Lewis, and as such, Lewis is not entitled to summary judgment based on the employer-employee relationship between Lewis and EthosEnergy. (Doc. 39).

B. COUNT I – PWL CLAIM

**1. Whether Moxie Freedom and EthosEnergy are Subject to the PWL**

According to Defendants, neither Moxie Freedom nor EthosEnergy are public bodies or employers subject to the PWL because neither receives public funding or appropriations from Pennsylvania or any of its political subdivisions. (Doc. 38, at 12; Doc. 40, at 12-13). Lewis responds that both Moxie Freedom and EthosEnergy "directly and indirectly receive[] public funds." (Doc. 46, at 16).

Under the PWL, "[n]o employer may discharge, threaten or otherwise discriminate or retaliate against an employee [. . .] because the employee [. . .] makes a good faith report [. . .]

8

to the employer or appropriate authority an instance of wrongdoing or waste by a public body." 43 Pa. Stat. Ann. § 1423(a). However, because Lewis contends that Monahan's actions constituted "commit[ing] an instance of 'wrongdoing,' … [Defendants] must qualify as a 'public body.'" *Eaves-Voyles v. Almost Family, Inc.*, 198 F. Supp. 3d 403, 407 (M.D. Pa. July 27, 2016). "A 'public body' includes government officers, political authorities, and any other body which is created or 'which is funded in any amount by or through Commonwealth or political subdivision authority,'" *Eaves-Voyles*, 198 F. Supp. 3d at 407 (citing 43 P.S. § 1422), or "a member or employee of that body." 43 Pa. Stat. Ann. § 1422 (3). An employer, meanwhile, "means a 'corporation for profit' that 'receives money from a public body to perform work or provide services relative to the performance of work for or the provision of services to a public body.'" *Tucci v. Gilead Scis., Inc.*, No. 2:21-CV-1859-NR, 2024 WL 4696008, at *4 (W.D. Pa. Nov. 6, 2024) (quoting *Tucci v. Gilead Scis., Inc.*, No. 2:21-CV-1859-NR, 2023 WL 2139931, at *1 (W.D. Pa. Feb. 21, 2023) (citations omitted)).

Having already found that Moxie Freedom is entitled to summary judgment as it did not employ Lewis, the Court considers whether EthosEnergy is public body or employer subject to the PWL. Moxie Freedom owns the Freedom Power Plant, which EthosEnergy manages. (Doc. 37-4, ¶¶ 5-6). The Freedom Power Plant is where Lewis worked and the location where he witnessed Monahan's conduct. (Doc. 41, ¶¶ 1, 46-67). The development of Freedom Power Plant "required public-private partnerships including support from the local government and communities in the form of tax incentives, infrastructure support, and abatements." (Doc. 46, at 16; Doc. 46-23). Additionally, the Freedom Power Plant uses natural resources such as steam and natural gas from state-owned resources that "inherently

establishes a connection to public funding, receipt of public money and public investments." (Doc. 46, at 20). The Freedom Power Plant is a member of a regional transmission organization ("RTO"), which is subject to regulation by the Federal Energy Regulatory Commission (FERC) and through which it receives revenue from deferred regulatory costs. (Doc. 46; Doc. 46-42, at 16-19). In the medical services contexts, district courts in this Circuit have previously held that there must be a direct payment from a public body to a corporation to subject the corporation to the PWL. *See Tucci*, 2024 WL 469600, at *5 (granting summary judgment to a defendant corporation that received from a public entity "the difference between the negotiated [drug] price and the ceiling [drug] price" because it was not subject to the PWL and stating "there must be some form of ***direct*** payment—*e.g.*, Medicaid reimbursements directly to the 'employer' in exchange for services" in order to subject an entity to the PWL); *Adams v. HCF Mgmt.*, No. CV 18-47, 2018 WL 3388404, at *4 (W.D. Pa. July 12, 2018) ("[T]he mere receipt of Medicaid reimbursements was insufficient to bring a private, for-profit corporation under the Whistleblower Law's definition of 'public body.'") (citing *Cohen v. Salick Health Care, Inc.*, 772 F. Supp. 1521, 1526-7 (E.D. Pa. 1991)); *Eaves-Voyles*, 198 F. Supp. 3d at 409 (holding that an entity that receives Medicaid funds does not "transform a private employer into a 'public body' subject to the Pennsylvania Whistleblower Law").

However, there is little guidance regarding whether tax credits, incentives, or abatements are sufficient to transform EthosEnergy or Moxie Freedom, both private

corporations, into a public entity or public body subject to the PWL.[2] When the parties cannot cite to any authority regarding their liability under the PWL, a defendant is not entitled to summary judgment. *See Gloukhova v. CSL Behring LLC*, No. CV 22-2223, 2023 WL 6050217, at *6 (E.D. Pa. Sept. 15, 2023) (denying summary judgment to a defendant in a Whistleblower Act matter when the parties fail to "shed[] light on how Pennsylvania's courts would characterize a tax credit for purposes of PWL liability, or whether those credits constitute state funding."). The record also contains evidence that EthosEnergy received public funding through appropriations and grants, including funding mechanisms and incentives from the Pennsylvania Department of Environmental Protection. (Doc. 46, at 18-19; Doc. 46-28; Doc. 46-29; Doc. 46-30; Doc. 46-31). Again, there is a genuine dispute of material fact regarding whether such funding mechanisms and participation in money streams subject EthosEnergy to the PWL. *See Gloukhova*, 2023 WL 6050217, at *6.

Viewing the record, or lack thereof, in the light most favorable to Lewis as the non-movant, the Court cannot say definitively that EthosEnergy is not subject to the PWL. Accordingly, EthosEnergy's motion for summary judgment will be **DENIED** on this basis. (Doc. 39).

### 2. Legitimate, Non-Retaliatory Reason for Discharge

Having found that Lewis has raised an issue of material fact in dispute regarding the applicability of the PWL to EthosEnergy, the Court now turns to whether EthosEnergy's motion for summary judgment on Lewis's PWL claim should be granted on the grounds that

---

[2] The Court could also not find supportive caselaw for Lewis's argument that EthosEnergy received public funds because it manages a power plant that receives deferred regulatory costs as a member of an RTO subject to the FERC regulatory scheme.

EthosEnergy has proffered a legitimate, non-retaliatory reason for Lewis's firing such that it cannot be held liable for retaliation under the PWL.

"At the summary judgment phase of a case, the three-stage burden-shifting framework laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), 'applies to retaliation claims brought pursuant to [the Pennsylvania Whistleblower Law].'" *Young v. Se. Pennsylvania Transportation Auth.*, No. CV 21-4375, 2023 WL 3204019, at *8 (E.D. Pa. May 2, 2023) (quoting *McCowan v. City of Phila.*, No. 19-3326, 2022 WL 742687, at *38 (E.D. Pa. Mar. 10, 2022) (citing *Anderson v. Bd. of Sch. Dirs. of Millcreek Twp. Sch. Dist.*, 574 F. App'x 169, 173 n.4 (3d Cir. 2014))). To obtain summary judgment on a retaliation claim under the burden-shifting framework, the employer must show that, as a matter of law, the trier of fact could not conclude "(1) that retaliatory animus played a role in the employer's decisionmaking process and (2) that it had a determinative effect on the outcome of that process." *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 501 (3d Cir. 1997). An employer may accomplish this showing by establishing the plaintiff's inability to raise a genuine dispute of material fact as to either "(1) one or more elements of the plaintiff's prima facie case or, (2) if the employer offers a legitimate non-retaliatory reason for the adverse employment action, whether the employer's proffered explanation was a pretext for retaliation." *Krouse*, 126 F.3d at 501; *see also O'Rourke v. Dep't of Corr*s., 566 Pa. 161, 778 A.2d 1194, 1200 (2001)). This burden is "relatively light: it is satisfied if the defendant articulates any legitimate reason for the adverse employment action; the defendant need not prove that the articulated reason actually motivated the action." *Krouse*, 126 F.3d at 500–01 (internal quotations omitted). Thus, "[t]he

proffered reason need only raise a genuine issue of fact as to whether the employer acted impermissibly." *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 189 (3d Cir. 2003).

EthosEnergy asserts that it has offered a legitimate non-retaliatory reason for Lewis's firing that that Lewis has failed to raise a genuine dispute of material fact as to whether the proffered explanation was a pretext for retaliation. (Doc. 40, at 14; Doc. 48, at 12). The record contains evidence that supports EthosEnergy's argument that Lewis's poor work performance and behavior as legitimate nonretaliatory reasons for his termination. (Doc. 41-4, at 21-22). Indeed, Lewis admits that he was told there were issues and performance concerns regarding his availability, communication, preparation of monthly reports. (Doc. 41-4, at 21-22). Further the record also contains evidence, not just of the aforementioned performance issues, but also that his supervisors documented that he was repeatedly making the same mistakes and did not show the necessary skills to remediate them, despite receiving feedback through performance reviews about these issues. (Doc. 41-4, at 22; Doc. 41-5, at 25-27). Ferrell also testified that two months before any of the events relevant to this litigation, including Monahan's actions occurred, EthosEnergy personnel discussed that "Bill lacked the ability to manage in a crisis using critical thinking skills and meet set expectations." (Doc. 41-5, at 24). In fact, there is also testimony to support that there were months when the plant could not operate because of Lewis's failure to have trailers on site. (Doc. 41-5, at 24). Accordingly, the Court finds that EthosEnergy has satisfied its "relatively light" burden under *McDonnell Douglas* of articulating a legitimate nondiscriminatory reason for Lewis's termination.

Because EthosEnergy has articulated a legitimate, nonretaliatory reason for Lewis's termination, the burden shifts back to Lewis to show that EthosEnergy's "proffered

explanation was false, and that retaliation was the real reason for the adverse employment action." *Krouse*, 126 F.3d at 501. To reiterate, in order to survive summary judgment at this stage, Lewis "must prove that retaliatory animus played a role in the employer's decisionmaking process and that it had a determinative effect on the outcome of that process." *Krouse*, 126 F.3d at 501. A plaintiff accomplishes this "by demonstrating 'such weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence.'" *Krouse*, 126 F.3d at 504 (quoting *Fuentes*, 32 F.3d at 765).

Lewis "'has not presented sufficient evidence to permit a factfinder to either disbelieve [EthosEnergy's] reasons, or to conclude that retaliation was the real reason' for the allegedly improper employment decision[ ]." *Mercer v. Se. Pennsylvania Transit Auth.*, 26 F. Supp. 3d 432, 447–48 (E.D. Pa. 2014) (quoting *Shaner v. Synthes*, 204 F.3d 494, 502 (3d Cir. 2000)), *aff'd sub nom. Mercer v. SEPTA*, 608 Fed.Appx. 60 (3d Cir. 2015) (not precedential). Lewis relies on evidence that he was promoted during his employment with EthosEnergy, most recently in February of 2021 to Facility Manager and "temporal proximity" to show that EthosEnergy's proffered reason for his termination was pretextual. (Doc. 46, at 25). However, Lewis ignores the evidence that only a few days passed between the most recent instance that he received negative feedback about his performance and his firing. (Doc. 41, ¶¶ 27-45; Doc. 41-2; Doc. 41-4, at 17-22; Doc. 41-5, at 22-24, 27-28; Doc. 41-6, at 5; Doc. 41-7, Doc. 41-22). He also fails to acknowledge that many of the concerns with his employment, particularly those regarding his performance creating monthly reports, were new responsibilities in his role as Facility Manager. (Doc. 46-2, at 51; Doc. 41-4, at 22; Doc. 46-4,

at 146-147). Lewis does not explain how a promotion prior to the start of performance concerns that were related to new job responsibilities in his new role, such as his preparation of monthly reports, his availability after hours, and his handling of a crisis as Facility Manager, is relevant here. In fact, Lewis cites evidence that Ferrell testified that Lewis was "good at his job" as an operations manager and maintenance manager to argue that he was also a strong employee in his Facility Manager role– the role from which he was fired. (Doc. 46, at 25). Ferrell never testified that Lewis was a good Facility Manager, and in fact the record contains evidence of the opposite. (Doc. 41-5; Doc. 46-4). Because Lewis fails to carry his burden of demonstrating evidence in the record sufficient for a reasonable fact finder to conclude that EthosEnergy's proffered reasons for Lewis's termination are pretext for retaliation, EthosEnergy's motion for summary judgment as to the PWL retaliation claim in Count I will be **GRANTED**. (Doc. 39).

C. COUNT II – COMMON LAW CLAIM AGAINST ETHOSENERGY

EthosEnergy submits that it is entitled to summary judgment on Lewis's common law wrongful termination claim in Count II because the PWL bars a common law claim for wrongful discharge, and further, that Lewis has not shown evidence that a public policy was violated. (Doc. 40, at 17-18). Lewis responds that that his termination was unlawful because the conduct for which he reported Monahan was a violation of OSHA, without much clarity or explanation about how this meets the common law wrongful discharge requirements. (Doc. 46, at 27-28).

Pennsylvania law does not recognize a common law cause of action for violating public policy if a statutory remedy exists. *Gillispie v. RegionalCare Hospital Partners Inc.*, 892 F.

3d 585, 597 (3d Cir. 2018); *Spriggs v. City of Harrisburg*, 679 F. Supp. 3d 144, 155 (M.D. Pa. 2023) ("it is well settled that courts will not entertain a separate common law action for wrongful discharge where specific statutory remedies are available.") (citing *Clay v. Advanced Computer Applications*, 522 Pa. 86, 559 A.2d 917, 918 (1989)). "Indeed, courts have held that the PWL has the same preemptive effect on the common law public policy exception as other statutes, and have accordingly barred plaintiffs from pursuing the public policy exception when the PWL affords a statutory remedy." *Spriggs,* 679 F. Supp. 3d at 156 (granting a motion to dismiss on grounds that the PWL preempted common law wrongful discharge claim) (citing *Katzenmoyer v. City of Reading, Pa.*, 158 F.Supp. 2d 491, 503–04 (E.D. Pa. 2001) ("Under Pennsylvania law, there is an action for wrongful discharge only where there is no available statutory remedy for the aggrieved employee ... Courts have specifically applied this rule to bar common law claims where a plaintiff had cognizable claims under the Whistleblower Act")); *Freeman v. McKellar*, 795 F.Supp. 733, 742 (E.D. Pa. 1992) (holding that the plaintiff's appropriate statutory remedy under the PWL preempted their wrongful discharge claim and granting defendant's motion to dismiss in part). Further, the preemptive effect of the PWL on a common law claim does not turn on the success of the plaintiff's PWL claim, but rather the existence of the statute. *Spriggs,* 679 F. Supp. 3d at 155-56 ("It is the existence of the remedy, not the success of the statutory claim, which determines preemption.") (citing *Jacques v. AKZO Int'l Salt, Inc.*, 619 A.2d 748, 753 (Pa. Super. Ct. 1993)).

Here, the existence of the PWL bars Lewis's claim, regardless of the fact that EthosEnergy is entitled to summary judgment on that PWL claim. However, even assuming *arguendo* that the PWL cannot apply to EthosEnergy or that the PWL does not bar the

common law claim, EthosEnergy would still be entitled to summary judgment. Generally, Pennsylvania's at-will employment doctrine empowers employers to terminate an employee for any reason, or even without a specified reason, with the exceptions of when contract, statute or public policy prohibit such a termination. *See Eash v. County of York, Pa.*, 450 F. Supp. 568, 582 (M.D. Pa. 2020) (quoting *Gillispie v. RegionalCare Hopsital Parners Inc.*, 892 F.3d 585, 597 (3d Cir. 2018)). The public policy exception to at-will employment, which Lewis relies on here, has been construed narrowly in this Circuit. *Eash*, 450 F. Supp. at 582 (quoting *Fraser v. Nationwide Mutual Ins. Co.*, 352 F. 3d 107, 111 (3d Cir. 2003)). In determining what constitutes public policy, courts have stated that is must be ascertained from the laws and legal precedents of the Commonwealth. *Weatherhold v. Radioshack Corp.*, 339 F. Supp. 2d 670, 673–74 (E.D. Pa. 2004) (citing *McLaughlin v. Gastrointestinal Specialists, Inc.*, 750 A.2d 283, 289 (Pa. 2000)). "[A] bald reference to a violation of a federal regulation, without any more articulation of how the public policy of the Commonwealth is implicated, is insufficient to overcome the strong presumption in favor of the at-will employment relation." *Weatherhold,* 339 F. Supp. 2d at 678 (quoting *McLaughlin,* 750 A.2d at 289). A plaintiff may meet this requirement by filing a report with OSHA, provided that the plaintiff alleges that the subsequent dismissal also violates a correlative Pennsylvania state law. *Weatherhold,* 339 F. Supp. 2d at 680 ("the public policy violation that [plaintiff] references in his Amended Complaint…gives rise to a cause of action when the PWCRA [state law] is properly read in conjunction with the OSH Act"). Without a report or complaint to OSHA or even an explanation of how Lewis's complaint to his supervisors about Monahan's actions that he contended violated OSHA implicate the Commonwealth or state policy, we cannot find

evidence of a public policy at stake sufficient to overcome the at-will employment doctrine in Pennsylvania. *See McLaughlin*, 750 A.2d at 290 ("it is a mistake to baldly point to a federal statute or administrative regulation and, without more, proclaim this as the public policy of the Commonwealth, such that every violation of any federal code, or statute becomes the basis for seeking a common law remedy against an employer.").

Accordingly, EthosEnergy's motion for summary judgment will be **GRANTED** as to the common law claim in Count II. (Doc. 39).

## IV. CONCLUSION

For the foregoing reasons, Defendants' motions for summary judgment are **GRANTED**. (Doc. 37; Doc. 39).

An appropriate Order follows.

Dated: February 18, 2025

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**United States District Judge**